UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARAY FREEMAN )<br>    Plaintiff )<br> )<br>v. )<br> )<br>A BETTER WAY WHOLESALE )<br>AUTOS, INC )<br>    Defendant )<br> ) | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED<br><br><br><br><br>MARCH 6, 2013 |

## COMPLAINT

1. This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 *et seq.,* the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.,* and for breach of contract, fraud, and misrepresentation.

2. Plaintiff, Sharay Freeman, ("Freeman" or "Plaintiff") is a consumer residing in Manchester, Connecticut, and she is a "consumer" as that term is defined in 15 U.S.C. § 1602(i).

3. Defendant, A Better Way Wholesale Autos, Inc. ("ABW" or "Defendant"), is a Connecticut corporation that operates a car dealership in Naugatuck.  ABW is a "creditor" as defined by 15 U.S.C. § 1602(g).

4. This Court has jurisdiction over ABW because it is located in Connecticut and regularly does business in Connecticut.

5. Venue in this Court is proper, because the transaction alleged herein occurred in this state.

6. On or around February 16, 2013, Plaintiff visited ABW to look at a 2007 Honda Odyssey minivan, VIN # 5FNRL38607B447562 (the "Vehicle") that was advertised on ABW's website for a cash price of $10,995.

7. Plaintiff met with ABW's sales representative, Alex Pierre, who acted at all times as the authorized representative of ABW.

8. Plaintiff gave Pierre her credit information, including her current income.

9. Plaintiff and Pierre discussed what other charges there would be for her to purchase the Vehicle, and Pierre informed her that, in addition to interest, she would have to pay a dealer conveyance fee, registration fees, and sales tax.

10. Pierre informed Plaintiff that she would have to make a downpayment of $2,500 in order to purchase the Vehicle, and he asked her to pay that amount at that time.

11. Plaintiff responded that she thought that the downpayment was not made until her credit application had been approved.

12. Pierre told Plaintiff that ABW needed to receive the downpayment before it could process her application and that the downpayment would be refunded if Plaintiff's application was not approved.

13. Plaintiff did not pay the downpayment at that time because she did not have those funds available to her.

14. Plaintiff independently estimated what her approximate monthly payments would be, and she reasonably believed that they would be less than $320 per month.

15. She made this estimate by adding the additional costs and expenses that Pierre had informed her she would have to pay and by utilizing a loan calculator,

applying an interest rate of 19%, which she knew was the maximum permissible interest rate under Connecticut law, and a 48-month payment schedule.

16. Plaintiff returned to ABW on February 18 and paid the $2,500 deposit.

17. Pierre told her that ABW would begin work on obtaining credit approval.

18. A few days later, Pierre called Plaintiff and informed her that her credit application had been approved and that she should come to ABW with a copy of her 2012 W-2 wage statement and proof that she had obtained insurance on the Vehicle.

19. Pursuant to and in reliance upon Pierre's representation and instruction, Plaintiff obtained insurance for the Vehicle, and she returned to ABW with the requested documents on February 22 intending to sign contract documents and accept delivery of the Vehicle.

20. Plaintiff was not given an opportunity to sign contract documents at that time, ostensibly because her W-2 wage statement did not reflect a recent increase to her income, and Pierre told her that it would be necessary to start the credit approval process over.

21. Plaintiff returned to ABW the next day and met with Rob Italiano, a finance manager who acted at all times as an authorized representative of ABW.

22. Italiano initially told Plaintiff that she had been approved for monthly payments of $520/month.

23. Plaintiff protested, and Italiano told her that he had been able to reduce the payments to $441/month for 42 months.

3

24. Plaintiff asked if the financing could be extended over 48 months, and Italiano said that ABW never extends financing over 48 months, a representation which Plaintiff believes and accordingly alleges, was false and misleading.

25. Plaintiff responded that she was unwilling to pay $441/months, and Italiano said that was the best that he could do.

26. Plaintiff asked Italiano what her options were, and he responded that she had no options, that she had been approved, and that is what her payments were going to be.

27. During all of this time, Italiano was holding papers, which he never provided to Plaintiff to examine, and at no time was she given a copy of the papers.

28. Plaintiff asked Italiano to let her examine the papers, and Italiano responded that he would go over the papers with her after she signed them.

29. At no time did Italiano or ABW provide Plaintiff with a copy of the disclosure required under 15 U.S.C. § 1638 with regard to the proposed deal.

30. Plaintiff refused to sign the papers because she had not had an opportunity to review them and because she was unwilling to make payments of $441/month.

31. Pierre then joined the conversation, and he told Plaintiff that they would try to lower the interest rate and the payment.

32. Plaintiff returned to ABW on March 2, and she was directed to speak with John Albino, a finance manager who acted at all times as an authorized representative of ABW.

33. Albino told Plaintiff that he was able to reduce her payments to $342/month for 42 months.

34. He informed her that, in order to reduce her interest rate, he had added a GAP contract and a service contract at a combined cost of approximately $1,800.

35. Plaintiff told Albino that she did not want the GAP contract or the service contract and asked to purchase the Vehicle without those add-ons.

36. Albino informed her that the deal "wouldn't work" without those items included.

37. At no time did Albino or ABW provide her with a copy of the disclosure required under 15 U.S.C. § 1638 with regard to the second proposed deal.

38. Additionally, Plaintiff believes and accordingly alleges that the proposed deal included a TILA disclosure that improperly included the cost of the GAP and the service contract as part of the amount financed rather than as part of the finance charge, even though they were required in order to obtain credit approval and were therefore an incident of financing that would not be imposed in a cash transaction for the Vehicle.

39. Plaintiff asked for her deposit back, and Albino informed her that she was not entitled to her deposit back because her credit had been approved.

40. ABW has failed and refused to return Plaintiff's deposit.

41. Because ABW has wrongfully retained Plaintiff's money, she has been hindered in her efforts to obtain another vehicle, and she has suffered losses and damages in the form of rental expenses and loss of use of money.

42. ABW has violated TILA with respect to each of the proposed deals, and it is liable to Plaintiff for $2,000 for each violation, her actual damages, and a reasonable attorney's fee pursuant to 15 U.S.C. § 1640.

43. To the extent that the downpayment is deemed a deposit and is subject to a liquidated damages provision, ABW failed to provide Plaintiff with a copy of any retail

installment sales contract in violation of RISFA, Conn. Gen. Stat. 36a-771(a) and has also violated RISFA by virtue of its TILA violations, which are incorporated into RISFA by operation of Conn. Gen. Stat. § 36a-771(b), and Plaintiff is entitled to a rescission of the contract and a return of her $2,500.

44. Through the above-described conduct, ABW violated CUTPA.

45. As a result of the aforedescribed conduct, Plaintiff suffered an ascertainable loss and damages, including her loss of $2,500, her inability to obtain another car due to ABW's improper retention of the funds that would otherwise be available for a downpayment, and rental expenses.

46. For ABW's violations of CUTPA, Plaintiff is entitled to her damages plus punitive damages and a reasonable attorney's fee.

47. ABW has engaged in fraudulent conduct for which it is liable.

48. ABW has misrepresented its refund policy and it is liable to Plaintiff for the misrepresentation.

49. ABW has breached its agreement to refund the deposit.

**Wherefore, Plaintiff claims,** actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); a rescission of the contract and a return of the amounts paid thereunder; actual damages pursuant to Conn. Gen. Stat. § 42-110g(a); statutory punitive damages pursuant to Conn. Gen. Stat. § 42-110g(g); attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d); damages for fraud, misrepresentation; common law punitive damages for its fraud; and attorney's fees pursuant to Conn. Gen. Stat. § 42-150bb.

                                 **PLAINTIFF, SHARAY FREEMAN**

                              By: /s/ Daniel S. Blinn_____
                                Daniel S. Blinn, ct02188
                                dblinn@consumerlawgroup.com
                                Consumer Law Group, LLC
                                35 Cold Spring Rd. Suite 512
                                Rocky Hill, CT  06067
                                Tel. (860) 571-0408
                                Fax (860) 571-7457