IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                     :
SHARAY FREEMAN                       :          3:13 CV 315(JBA)
                                     :
v.                                   :
                                     :
A BETTER WAY WHOLESALE AUTOS, INC.   :          DATE: AUGUST 15, 2013
                                     :
-------------------------------------------------x
```

<u>RECOMMENDED RULING ON DEFENDANT'S MOTION TO OPEN
DEFAULT ENTRY AND ON PLAINTIFF'S MOTION FOR JUDGMENT</u>

On March 6, 2013, plaintiff Sharay Freeman commenced this action against A Better

Way Wholesale Autos, Inc. ["ABW"], in which Complaint plaintiff alleges violations of the

Truth in Lending Act ["TILA"], 15 U.S.C. §§ 1601 <u>et seq.</u>, the Connecticut Retail Installment

Sales Finance Act ["RISFA"], CONN. GEN. STAT. §§ 36a-770 <u>et seq.</u>, the Connecticut Unfair

Trade Practices Act ["CUTPA"], CONN. GEN. STAT. §§ 42a-110a <u>et seq.</u>, and for breach of

contract, fraud, and misrepresentation. (Dkt. #1).   On May 14, 2013, plaintiff filed a Motion

for Entry of Default under Federal Rule of Civil Procedure 55(a) (Dkt. #8), which motion was

granted by the Clerk the next day. (Dkt. #9).   Two weeks later, defense counsel filed his

appearance, and on June 7, 2013, defendant filed a Motion to Open Default Entry.  (Dkt.

#11).  Six days later, on June 13, 2013, plaintiff filed her objection to defendant's Motion

(Dkt. #13), along with a Motion for Judgment, and brief in support.[1]  (Dkt. #14).  Four days

later, the pending motions were referred to this Magistrate Judge from United States District

Judge Janet Bond Arterton.  (Dkt. #15).

---

[1]Attached to plaintiff's Motion for Judgment is an affidavit, sworn to by plaintiff on June 12,
2013 ["Freeman Aff't"], and two exhibits: copies of receipts from ABW, dated February 16 and 18,
2013 (Exh. A), and a copy of plaintiff's bank statement for February 1 to 28, 2013, reflecting nine
entries from Enterprise Rental Car (Exh. B).

On July 19, 2013, defendant filed its Answer (Dkt. #19), along with its brief in opposition to plaintiff's Motion for Judgment.  (Dkt. #20).[2]  On July 25, 2013, plaintiff filed her reply brief.  (Dkt. #22).

For the reasons stated below, defendant's Motion to Open Default Entry (Dkt. #11) is granted, and plaintiff's Motion for Judgment (Dkt. #14) is denied without prejudice as moot.

## I. DISCUSSION

In this case, where default has entered against defendant, all factual allegations in the complaint are accepted as true, except those relating to damages.  Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)(citations omitted); see also Atlantic Recording Corp. v. Brennan, 534 F. Supp. 2d 278, 280 (D. Conn. 2008)(internal quotations & citations omitted)("[T]he factual allegations of the complaint, except those pertaining to damages, should ordinarily be taken as true, with any doubt being resolved in favor of the defaulting party.").[3]

---

[2]Defendant also filed an affidavit of Joe Gorbecki, defendant's Manager, sworn to July 19, 2013 ["Gorbecki Aff't"]. (Dkt. #21).

[3]Plaintiff avers that on or around February 16, 2013, plaintiff visited defendant ABW to "look at a 2007 Honda Odyssey minivan" that was advertised on defendant's website for a cash price of $10,995. (Freeman Aff't ¶ 3; see Gorbecki Aff't ¶ 3).  Plaintiff met with Alex Pierre, a sales representative of defendant, who took plaintiff's credit information and informed her that, in addition to interest, she would have to pay a dealer conveyance fee, registration fees, and sales tax.  (Id. ¶¶ 4-6).  As Gorbecki averred, it is standard practice to have customers meet with a salesperson to discuss the purchase of any vehicle, and to discuss the purchase price, financing options, and any other charges.  (Gorbecki Aff't ¶¶ 4-5). Pierre informed plaintiff that she needed to pay a $2,500 down payment but plaintiff resisted "because [she] did not have those funds available" at that time, and because she thought that the down payment was not paid until her credit application was approved.  (Freeman Aff't ¶¶ 7-8, 10).  According to plaintiff, Pierre informed her that ABW needed the down payment before it could process her application and that the down payment would be refunded if her application was not approved.  (Id. ¶ 9; Gorbecki Aff't ¶ 8).  Two days later, plaintiff returned to ABW and paid the $2,500 deposit.  (Plaintiff Aff't ¶ 13 & Exh. A).

"A few days later," Pierre informed plaintiff that her credit application had not been

When the non-defaulting party moves for default judgment and the defaulting party moves to set aside the default pursuant to Rule 55(c), the Court's decision is guided by three considerations: "(1) the willfulness of default; (2) the existence of a meritorious defense; and (3) the possibility of prejudice to the plaintiffs should the default judgment be vacated." <u>Atlantic Recording Corp.</u>, 534 F. Supp. 2d at 280-81 (internal quotations & citations omitted).

---

approved and that she should return to ABW with a copy of a 2012 W-2 wage statement and proof that she obtained insurance on the vehicle. (<u>Id.</u> ¶ 15).  Plaintiff obtained insurance and returned to the dealership on February 22, 2013, with the intent of signing the documents and accepting delivery of the vehicle. (<u>Id.</u> ¶ 16).  Pierre informed plaintiff that it would be necessary to start the credit approval process over, and the next day, plaintiff returned and met with Rob Italiano, a finance manager for ABW.  (<u>Id.</u> ¶¶ 17-18).  Similarly, Gorbecki averred that because plaintiff's W-2 statement did not reflect the income on her application, it was necessary to repeat the credit approval process.  (Gorbecki Aff't ¶ 11).

When plaintiff met with Italiano, he initially informed plaintiff that she was approved for monthly payments of $520/month, which far exceeded the $320/month payments plaintiff calculated using a 19% interest rate.  (Freeman Aff't ¶¶ 11-12, 18-19).  After plaintiff "protested," Italiano reduced the payments to $441/month for 42 months.  (<u>Id.</u> ¶ 20; <u>see also</u> Gorbecki Aff't ¶ 12).  Plaintiff was unwilling to pay that amount; Italiano responded that she "had no options, that [she] had been approved, and that is what [her] payments were going to be." (Freeman Aff't ¶¶ 22-23; Gorbecki Aff't ¶ 13).  Gorbecki avers that plaintiff was approved for credit, and at her request, her monthly payment was "reduced as low as possible." (Gorbecki Aff't ¶ 9).

During this time, Italiano was holding papers that plaintiff requested to examine but Italiano "responded that he would go over the papers with [her] after [she] signed them." (Freeman Aff't ¶¶ 24-25).  Plaintiff refused to sign the papers because she did not have an opportunity to review them and because she was unwilling to make payments of $441/month.  (<u>Id.</u> ¶¶ 27).  At no time was plaintiff given a copy of the disclosure required under 15 U.S.C. § 1638 with regard to this proposed deal.  (<u>Id.</u> ¶ 26).

On March 2, 2013, plaintiff returned to ABW and was directed to speak to John Albino, a finance manager for defendant.  (<u>Id.</u> ¶ 29).  He informed plaintiff that he was able to reduce her payments to $342 per month for 42 months (<u>id.</u> ¶ 30; Gorbecki Aff't ¶ 14), and in order to reduce her interest rate, he added a GAP contract and a service contract at a combined cost of approximately $1,800.  (Plaintiff Aff't ¶ 31).  Plaintiff informed Albino that she did not want either of those add-ons but she was informed that without them, the deal "'wouldn't work[.]'" (<u>Id.</u> ¶¶ 32-33; Gorbecki Aff't ¶ 15 (plaintiff refused to proceed with the transaction despite being approved)).  At no time was plaintiff provided with a copy of the disclosure under 15 U.S.C. § 1639 with regard to this second deal. (Freeman Aff't ¶ 34).  ABW has not returned plaintiff's deposit, and as a result, she did not have the funds to purchase a new vehicle and was forced to rent a vehicle for transportation, at a cost of $1,405.31.  (<u>Id.</u> ¶¶ 37-39 & Exh. B).  According to Gorbecki, plaintiff was not entitled to the deposit back on the vehicle purchase because the credit had been approved and plaintiff "refused to accept the terms of the loan."  (Gorbecki Aff't ¶ 16).

The Second Circuit has expressed its preference for resolving disputes on the merits, "because defaults are generally disfavored and are reserved for rare occasions . . . ." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)(citations omitted); see also Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001).

First, the Court must consider whether the defendant's default was willful.  The inquiry into willfulness has been characterized by the Second Circuit as a "subjective inquiry." Atlantic Recording Corp., 534 F. Supp. 2d at 281, citing Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996).  This subjective inquiry "effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." Am. Alliance Ins. Co., 92 F.3d at 61 (footnote omitted).

Here, defendant asserts that good cause exists to open the entry of default in that defendant was "unable to locate and retain counsel to defend this action on a timely basis[,]" counsel was not retained until May 28, 2013, and defendant has "good and meritorious defenses to [p]laintiff's [C]omplaint[.]" (Dkt. #11).

Plaintiff responds that defendant has "not convincingly established that its default was not willful[,]" in that plaintiff's counsel was contacted by an attorney identifying himself as counsel for ABW on April 5, 2013, thus establishing that ABW was aware of the action at that time, and plaintiff's counsel contacted this aforementioned attorney on May 23, 2013 and advised him of the entry of default on May 14, 2013, and yet ABW took no action for another five days. (Dkt. #13, at 2).  Defense counsel then waited an additional ten days after appearing on May 28, 2013 to respond to the default on June 7, 2013, by which time plaintiff's counsel had already incurred fees by working on the motion for default judgment ordered due on June 14, 2013.  (Id. at 2-3).

4

As Judge Arterton found in <u>Atlantic Recording Corp.</u>, "Lacking more information, the [d]efendant's failure to answer the complaint after proper service can be characterized as negligent at most, perhaps cutting slightly in favor of the [p]laintiff[ ], if at all." 534 F. Supp. 2d at 281 (citations omitted); <u>see also Pascale v. Great Am. Ins. Co.</u>, No. 3:03 CV 1216 (RNC), 2004 WL 1149488, at  *1 (D. Conn. May 20, 2004)("Defendant explains that its failure to respond to the complaint in a timely manner resulted from carelessness or negligence, rather than a deliberate decision.").   The course of events in this case demonstrate carelessness and perhaps, inattentiveness to this file, thus falling at least "slightly in favor of the [p]laintiff."   <u>Atlantic Recording Corp.</u>, 534 F. Supp. 2d at 281 (citations omitted).   That said, defendant's actions were not "so nonchalant as to be willful[,]" and certainly had not risen to the level of gross negligence.  <u>Id.</u> (citation & internal quotations omitted); <u>see Smith v. Cox</u>, No. 3:08 CV 509(CSH), 2009 WL 4730746, at *3 (D. Conn. Dec. 8, 2009).  Accordingly, this element, "cut[s] slightly in favor of the [p]laintiff[ ], if at all."  <u>Atlantic Recording Corp.</u>, 534 F. Supp. 2d at 281 (citations omitted).

The second factor the Court must consider is whether the defendant asserts a meritorious defense.   "[T]his second factor does not demand a high showing."  <u>Id.</u>   "A possible defense is sufficient even if not ultimately persuasive at this stage, so long as there is something more than mere conclusory denials."   <u>Id.</u>  (internal quotations & citations omitted).

In its Motion to Open Default Entry, defendant contends that it has "good and meritorious defenses to [p]laintiff's [C]omplaint" and "will diligently pursue the action now that counsel has been retained." (Dkt. #11, at 1-2).  While simply claiming the existence of a valid defense does not constitute the assertion of a meritorious defense, counsel has

appeared, defendant has been diligent in responding to this matter, defendant has filed its Answer and Special Defenses, and after reviewing the Answer and "ABW's arguments regarding consummation of the transaction, [p]laintiff [has] agree[ed] that judgment should not enter on the TILA and RISFA claims." (Dkt. #11, at 2; Dkt. #19; Dkt. #22, at 1).[4] Given the low showing that is required, this factor weighs in favor of setting aside the default.

        The final factor to be weighed is whether plaintiff will be prejudiced if entry of default is set aside. This factor requires more than just delay of plaintiff's relief. Enron Oil Corp., 10 F.3d at 98 (citation omitted). Prejudice to the plaintiff can be shown if granting the Motion to Open Default Entry would "result in the loss of evidence, create increased difficulties of discovery, or provide opportunity for fraud and collusion." New York v. Green, 420 F.3d 99, 110 (2d Cir. 2005)["Green"](internal quotations & citations omitted); Atlantic Recording Corp, 534 F. Supp. 2d at 282 (citation omitted).

        Plaintiff's relief was delayed just over one month from the time of service on defendant on April 22, 2013 (see Dkt. #7), to the filing of defense counsel's appearance on May 29, 2013 (Dkt. #10), and followed by the filing of defendant's Motion to Open Default Entry just over a week later. (Dkt. #11). Even if this time frame constitutes a delay in the case, "delay alone is not a sufficient basis for establishing prejudice." Green, 420 F.3d at 110 (internal quotations & citation omitted). While plaintiff contends that her counsel had already begun working on the Motion for Default Judgment when defendant responded to the entry of default, thereby incurring "substantial fees" (Dkt. #13, at 3), without a further showing of prejudice to plaintiff, such as loss of evidence, or difficulties of discovery, this

---

[4]See note 3 supra.

Plaintiff does maintain that judgment should enter on her fraud and CUTPA claims.

factor does not weigh in plaintiff's favor.

In light of the foregoing analysis, the three determinative factors weigh in favor of granting the defendant's Motion to Open Default Entry. This result is consistent with the Second Circuit's "clear preference" to decide cases on their merits and to reserve default judgment as a final sanction. Pecarsky, 249 F.3d at 174.

### B.  MOTION FOR DEFAULT JUDGMENT

In light of the conclusion reached is Section I.A. supra, plaintiff's Motion for Default Judgment (Dkt. #14) is denied without prejudice as moot.

### II. CONCLUSION

For the reasons stated below, defendant's Motion to Open Default Entry (Dkt. #11) is granted, and plaintiff's Motion for Default Judgment (Dkt. #14) is denied without prejudice as moot.[5]

The parties are free to seek the district judge's review of this recommended ruling. See 28 U.S.C. § 636(b)**(written objection to ruling must be filed within fourteen calendar days after service of same)**; FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

---

[5]If either counsel believes that a settlement conference before this Magistrate Judge would be productive, he should contact Chambers accordingly.

Dated at New Haven, Connecticut, this 15th day of August, 2013.


  /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge